UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| WALTON GLOBAL INVESTMENTS, LTD. )<br>25th Floor, 500- 4th Ave. S.W. )<br>Calgary, AB, Canada, T2P 2V6, )<br> )<br>         and )<br> )<br>WALTON VIRGINIA, LLC, )<br>8800 N. Gainey Center Dr., Suite 345 )<br>Scottsdale, AZ 85258, )<br>                              Plaintiffs, )<br>         v. )<br> )<br>BOWMAN CONSULTING GROUP, LTD. )<br>12355 Sunrise Valley Drive, Suite 520 )<br>Reston, VA 20191 )<br>Serve:  Legalinc Corporate Services, Inc. )<br>         440 Monticello Avenue, Suite 1800 )<br>         Norfolk, VA 23510, )<br> )<br>                              Defendant.    ) | Case No.  3:23cv87 |

# COMPLAINT

Walton Global Investments, Ltd. ("**Walton Global**") and Walton Virginia, LLC ("**Walton Virginia**") (Walton Global and Walton Virginia together the "**Plaintiffs**"), by and through their undersigned counsel, hereby sue Bowman Consulting Group, Ltd. ("**Bowman**") and for a cause of action state:

## Jurisdiction And Venue

1.  Walton Global is a corporation formed under the laws of Canada with its principal place of business located in Canada.

2.  Walton Virginia is a limited liability company.  Walton Virginia's sole member is Walton International Group (USA), Inc., which is a corporation formed under the laws of Arizona with its principal place of business located in Arizona.

3. Bowman is a corporation formed under the laws of the state of Delaware with its principal place of business located in Virginia.

4. In light of the foregoing, diversity exists as between the Plaintiffs and the Defendant.

5. The amount in controversy exceeds $75,000. Given this, and the existence of diversity as between the Plaintiffs and the Defendant, this Court has subject matter jurisdiction under 28 U.S.C. §1332 to decide this controversy.

6. Venue in this Court is proper, as the matters in controversy involve transactions and occurrences between the parties in Virginia, concerning real property located in Powhatan County, Virginia and contracted-for services, undertakings, acts and omissions performed/ committed in Powhatan County, Virginia.

## Facts Common To All Counts

7. In April 2018, Walton Global, a national real estate land asset manager & financier specializing in (*inter alia*) the purchase, entitlement and re-sale of developable, residential real estate, was considering whether to purchase a piece of real property comprised of a 74 acre +/- parcel of land (a.k.a. parcel 47-29) in Powhatan County, Virginia (the "**Property**").

8. To assist with a due diligence feasibility study and concept plan for the Property, and to distill a reasonable projection of the net development potential for the subject Property under state and local regulations and restrictions regarding same, Walton Global engaged Bowman by written contract – entered into on or about April 18, 2018 (the "**Contract**") -- to perform the aforesaid analyses. Those analyses were intended to inform Walton Global's understanding of the residential and other development potential for the subject Property and to help Walton Global decide whether to waive its feasibility study contingency and go firm on a

2

contract to purchase the subject Property that Walton Global was contemplating at the time and subsequently entered into in fact on or about April 25, 2018 (said contingent contract to purchase hereinafter the "**PSA**").

9.      That PSA was entered into by Walton Virginia within days after Walton Global's contracting (on its own behalf and for its affiliates) with Bowman, reserving to Walton Virginia (as contract purchaser) a 60-day feasibility study period before Walton Virginia was required to go firm on the PSA and (*inter alia*) put at risk whatever deposit money Walton Virginia was required to pay under the PSA.

10.     In June of 2018, Bowman – bound by contract and holding itself out as a licensed expert in such matters – provided Walton Global a written Due Diligence Report and Concept Plan.  Those documents included Bowman's analysis and professional opinions, as an expert in local entitlement and development of real estate, of what the current development potential of the Property supposedly was and what was likely feasible in Powhatan County at that time (and for the foreseeable future) as a would-be development plan for the Property, including but not limited to the Property's potential for up-zoning under the then-current County comprehensive zoning planning for the Property – all with the express purpose of helping inform Walton Global's decision whether to go forward with its as-planned purchase and government entitlement process for the Property.

11.     Bowman's projected planning for supposedly feasible development of the Property erroneously analyzed the development potential and risk profile for the Property because it (*inter alia*) did not include any analysis of restrictive "proffers" of record which then encumbered the subject Property (the "**Subject Proffers**").  Despite that, Bowman expressly opined and (erroneously) assured Walton Global that no such restrictive proffers encumbered the

3

Property (a substantial pre-existing constraint continuing to restrict the Property's potential, unless negotiated away or modified in a successful future up-zoning of the Property – which could not be certain, in material part, because of the existence of the Subject Proffers) or would otherwise adversely impact the development potential of the Property. In fact, many restrictive proffers of record (*i.e.,* the Subject Proffers) did indeed encumber the Property, but were not discovered or disclosed to Walton Global by Bowman in its (accordingly) flawed feasibility projections and concept plans provided to Walton Global.

12. As a result, the Bowman Due Diligence Report and Concept Plan documentation (including with respect to supposed "net developable land") erroneously assumes the baseline restrictions applicable to the Property (without the Subject Proffers) and erroneously projects (*inter alia*) that "… the County should be amenable to rezoning to Village Residential," which is substantially more supposedly feasible development for the subject Property than could reliably be projected in fact, due to the undisclosed Subject Proffers. That was substantially due to the negative effect those Existing Proffers would likely cause on any effort to increase the development potential and density for the subject Property via the anticipated up-zoning (always Walton Global's stated plan, if feasible) despite what Bowman insisted was called for in the then (Planning and Zoning authority) comprehensive planning for the Property.

13. Bowman's Due Diligence Report and Concept Plan (and the lack of any disclosures with respect to certain wetlands/stream areas, which were also accurately described in the undisclosed Subject Proffers) were all oblivious to the undisclosed Subject Proffers. Those Subject Proffers, *inter alia*, expressly limit residential development of the Property to 10 large acreage single-family residential lots – in stark contrast to the several hundred single and multi-family units described and depicted in the Bowman Due Diligence Report and Concept

Plan – and were, accordingly, factually wrong, unreliable in fact, incomplete in scope and negligently rendered. All of the foregoing was in violation of Bowman's contractual and professional undertakings and applicable professional standards of care governing same.

14. In good faith reliance on Bowman's false and misinformed opinions with respect to the Property's development feasibility (as reported in Bowman's Due Diligence Report, its erroneous Concept Plan and faulty projections of "Net Developable Area" for the subject Property), Walton Virginia (an affiliate beneficiary under the Bowman Contract) waived feasibility and went firm on the PSA, and thereafter proceeded to closing on the subject Property in July 2018.

15. Bowman's reporting opined that the subject Property (which was then subject to three different zoning classifications) was likely to be approved – as supposedly called for in the applicable comprehensive plan (for the local zoning and land use district) – for up-zoning to so-called "Village Residential," with (*inter alia*) up to 4 units of density per acre. Indeed, that was the assumption in Bowman's Concept Plan, depicting hundreds of single family (attached and detached) and multifamily units as supposedly feasible. However, the existence of the Subject Proffers substantially changed the risk profile for the Property and drastically reduced the market value of the Property for any reasonably prudent and knowledgeable buyer (like Walton sought to be through Bowman), looking to purchase the land for that supposed up-zoning potential. Bowman always knew that was Walton Global's business plan, and Bowman expressly undertook to provide expert advice to Walton Global to help it decide whether to go forward with the project, starting with Walton Virginia waiving feasibility under the PSA and closing on the Property.

16. Even so, Bowman negligently failed to discover and disclose the Subject Proffers (or certain wetlands/stream areas, also described in the Subject Proffers but not discovered or disclosed by Bowman), let alone include them in its analysis for Walton Global, upon which Bowman knew Walton Global would be relying and did so in fact. Those proffers were essential information to know in trying to appreciate the risk/benefit calculus for Walton Global, just as they would be for any informed residential developer/purchaser, (again) like Walton Global sought to be in hiring and relying on Bowman's professional opinions.

17. As was always the stated plan if Bowman's reporting regarding potential up-zoning for the Property proved favorable, Walton Global, through its controlled entity, co-Plaintiff Walton Virginia, went to closing, reasonably believing (as any reasonably prudent buyer in Walton's position) that the Property – due to its favorable chances for up-zoning, as reported by Walton Global's fee expert, Bowman (and without any dreaded proffers) – was worth probably more, but not less than approximately $6,600,000. However, based upon the undisclosed Subject Proffers (and wetlands they also disclose) – had they been properly described and timely disclosed to Walton by its fee professional, Bowman – ***Walton Global (through Walton Virginia) would never have purchased the subject Property***.

18. Indeed, and based upon the late discovered (and undisclosed by Bowman) information concerning the Subject Proffers (and the wetlands expressly delineated therein), as well as the prejudicial effect that the Subject Proffers would have likely had on the Property for purposes of any potential upzoning described in Bowman's reporting [and notwithstanding Powhatan County's then comprehensive planning recommendation for upzoning the subject Property to Village Residential (and/or, worst case, Village Center)] – the actual value of the Property to a reasonably prudent and properly informed residential developer at the time of

6

Bowman's breach and at the time of Walton Virginia's closing on the Property (on false pretenses) shortly thereafter, was not more than the $1,150,000 paid in fact at closing – a difference of likely more, but not less than approximately $5,450,000 in compensable, benefit of the bargain direct breach damages.

## Count I
### (Breach of Contract/Professional Negligence)

19. Plaintiffs incorporate the foregoing factual allegations as though fully set forth.

20. Under the written Contract between Bowman and Walton Global, and applicable law (given the nature of Bowman's undertaking), Bowman, as a fee professional engineering firm and holding itself as an expert in real property development feasibility in Powhatan County, Virginia, owed Walton a contract and tort duty of due care owed by a reasonably prudent fee professional in the same profession, both as set forth in the Contract and otherwise. Bowman breached those legal duties by, *inter alia*, failing to discover and timely disclose the existence of the Subject Proffers (existence and scope of certain existing wetlands/stream areas inclusive), which disclosure was necessary for any reasonable, reliable and correct understanding of the development potential of the Property. That was an expressly understood and agreed purpose of Bowman's engagement and for the professional services it undertook to provide.

21. As a direct and proximate result of Bowman's breach of the applicable tort and agreed contract standards of care, including Bowman's failure to timely discover and disclose the Subject Proffers and in falsely and negligently opining with respect to development potential of the Property without factoring in the Subject Proffers (would-be corresponding disclosure of wetlands/stream area information in those proffers, inclusive), the Plaintiffs have suffered compensable money damages.

22. Under applicable Virginia law – in a non-defaulting plaintiff, versus fee expert consultant context like this – (and under the facts of this case), damages should be measured not later than the time of Plaintiffs' reliance-based purchase of the Property, and include direct damages equal to Plaintiffs' lost benefit of the bargain. In short, Plaintiffs have been damaged in this case to the extent of not less than the difference between (i) the Property's fair market value, as and if it had been as represented and warranted by Bowman in its reporting, and (ii) the Property's actual value with the Subject Proffers (and the full extent of wetlands/stream areas, which the Subject Proffers also disclosed), which Bowman failed to timely discover and explain to Walton Global.

23. All applicable notices were timely given and all conditions precedent to suit were timely satisfied under the subject Contract. Plaintiffs acted with appropriate due care and diligence at all times relevant.

WHEREFORE, Plaintiffs Walton Global Investments, Ltd. and Walton Virginia, LLC demand judgment against Defendant Bowman Consulting Group, Ltd. on Count I in the amount to be proved at trial and in excess of $75,000 (exclusive of costs), plus prejudgment interest from not later than the date of closing, an appropriate award of costs and post-judgment interest from the date of judgment.

**COUNT II**
**(Constructive Fraud/Negligent Misrepresentation/Non-Disclosure)**

24. Plaintiffs incorporate the foregoing factual allegations as though fully set forth.

25. The foregoing failure to timely discover and disclose, and material misrepresentations regarding, the supposed absence of the Subject Proffers and wetlands/stream areas (while under tort and contract duty to discover and disclose, both as a fee professional/ expert and otherwise) also and/or alternatively represented constructive fraud/negligent

misrepresentation and non-disclosure, while duty-bound (by both contract and tort law concerning performance of professional undertakings) to discover and disclose same. Bowman knew that Plaintiffs would rely on Bowman's material representations/failures to disclose (and upon which Plaintiffs did reasonably rely) and, in fact, had Bowman acted prudently in regard to those undertakings, failures to disclose and constructive fraud/negligent misrepresentations regarding the supposed absence of the undisclosed proffers and extent of wetlands/stream areas, the Plaintiffs would not have closed on the Property.

26. As a direct and proximate result of the Plaintiffs' reasonable, actual and detrimental reliance on Bowman's negligent misrepresentations and non-disclosures, the Plaintiffs closed on the purchase of the Property and suffered compensable damages.

27. Because these false inducements by Bowman regarding the supposed development potential of the Property, and which caused the Plaintiffs to close on false pretenses, arose from contract and were otherwise *de facto* warranties from Bowman regarding their supposed reliability and accuracy, the aforesaid "benefit of the bargain" measure of damages also applies in this context.

WHEREFORE, Plaintiffs Walton Global Investments, Ltd. and Walton Virginia, LLC demand judgment against Defendant Bowman Consulting Group, Ltd. on Count II in the amount to be proved at trial and in excess of $75,000 (exclusive of costs), plus prejudgment interest from not later than the date of closing, an appropriate award of costs and post-judgment interest from the date of judgment.

Respectfully submitted,


  /s/  William F. Gibson II
William F. Gibson II (VA Bar No. 45397)
wgibson@shulmanrogers.com
Kevin P. Kennedy (*pro hac vice* pending)
kkennedy@shulmanrogers.com
SHULMAN, ROGERS, GANDAL, PORDY
  & ECKER, P.A.
12505 Park Potomac Avenue, 6th Floor
Potomac, Maryland, 20854
(301) 230-5200; (301) 230-2891 (fax)
*Counsel for Plaintiffs*