IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WALTON GLOBAL INVESTMENTS,
LTD., et al.,

    Plaintiffs,

v.                          Civil Action No. 3:23-cv-87

BOWMAN CONSULTING GROUP,
LTD.,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANT'S MOTION TO DISMISS (ECF No. 9) pursuant to Fed. R. Civ. P. 12(b)(6) ("the Motion"). For the reasons set forth below, the Motion will be granted without prejudice and with leave to file an Amended Complaint.

## Background

Walton Global Investments, Ltd. ("Walton Global") and Walton Virginia, LLC ("Walton Virginia") ("Walton" or "Plaintiffs" when referred to collectively) filed this action against Bowman Consulting Group, Ltd. ("Bowman" or "Defendant"), alleging that Bowman breached the contract between it and Walton Global for consulting services. COMPLAINT (ECF No. 1). Those services concerned a parcel of land in Powhatan County, Virginia (referred to as "the Property"). The COMPLAINT alleges that Bowman provided

an erroneous analysis of "the development potential [of,] and [the] risk profile [of,] . . . the Property," and that Bowman omitted an analysis of restrictive proffers that significantly limited the Property's development potential. Compl. ¶¶ 7-8, 11.

In April 2018, Walton Global was considering whether it would purchase the Property, a seventy-four-acre parcel of land in Powhatan County, Virginia, where it planned to develop "several hundred single and multi-family units." Compl. ¶¶ 7, 13. On or about April 18, 2018, "[t]o assist with a due diligence feasibility study and concept plan for the Property," Walton Global entered into a contract with Bowman to perform the analysis (referred to as "the Contract"), allegedly with the intention "to help Walton Global decide whether to waive its feasibility study contingency" and whether to purchase the Property. Compl. ¶ 8. Approximately a week later, on April 25, 2018, Walton Virginia separately entered into a contingent contract to purchase the Property, which included a sixty-day feasibility study period before Walton Virginia had to "go firm" on the purchase contract. Compl. ¶¶ 8-9.

Bowman returned its Due Diligence Report and Concept Plan (referred to as "the Report") to Walton Global in June 2018. Compl. ¶ 10. The Report included Bowman's expert opinion and analysis concerning the feasibility of "up-zoning" the Property, allegedly with the "express purpose of helping inform Walton Global's decision whether to go forward with its as-planned purchase."

2

Compl. ¶ 10. However, the Report failed to "include any analysis of restrictive 'proffers' of record which then encumbered the subject property" and instead assured Walton Global that there were no such proffers on the Property. Compl. ¶ 11. The failure to have discovered the restrictive proffers is said to have led to a flawed analysis of the feasibility of transforming the Property in the manner planned by Walton Global. Compl. ¶ 12. The Report advised that the Property could be up-zoned when, in reality, the proffers significantly limited the development of the Property "and drastically reduced the market value of the Property for any . . . buyer . . . looking to purchase the land for that supposed up-zoning potential." Compl. ¶¶ 11, 13, 15.

In good faith reliance on the tendered Report and with no knowledge of the restrictive proffers, Walton Virginia (described in the COMPLAINT as "an affiliate beneficiary under the Bowman Contract") waived feasibility and purchased the Property in July 2018. Compl. ¶ 14. It is alleged that, if the Report had disclosed the restrictive proffers and had properly concluded that the proposed up-zoning could not occur, Walton Global (through Walton Virginia)[1] never would have purchased the Property because the value of the Property is estimated at $1,150,000 when taking into

---

[1] That is actually what the COMPLAINT alleges even though earlier the COMPLAINT alleges that Walton Virginia was the Walton entity that was a party to the contract to purchase the Property.

account the restrictive proffers rather than an estimated value of $6,600,000 if Walton been able to up-zone the Property as contemplated. Compl. ¶¶ 17-18.

To recover the difference between the expected value of the Property and the actual value of the Property (among other relief), the COMPLAINT asserts two claims against Bowman. COUNT ONE alleges a breach of contract and professional negligence claim for "failing to discover and timely disclose the existence of the Subject Proffers" when disclosure was necessary to produce a Report that met the requirements of the Contract. Compl. ¶ 20. It is then alleged that this breach of contract led Walton Virginia to purchase the Property, so both Walton Global and Walton Virginia suffered compensable money damages. Compl. ¶ 21. COUNT TWO presents an additional and/or alternative theory of recovery based on constructive fraud/negligent misrepresentation/non-disclosure because Bowman had a duty to discover and disclose the restrictive proffers and knew that both Walton Global and Walton Virginia would rely on any representations made in the Report. Compl. ¶¶ 24-27. Bowman seeks dismissal of both counts.

## DISCUSSION

Bowman asserts four reasons in support of its Motion to Dismiss. Each argument is addressed in turn. For the reasons set forth below, the Motion will be granted without prejudice and with leave to file an Amended Complaint.

4

## I. Legal Standard

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff need not provide "detailed factual allegations," Twombly, 550 U.S. at 555, but must provide enough factual context so the court can draw reasonable inferences that there is "more than a sheer possibility that the defendant acted unlawfully." Iqbal, 556 U.S. at 678. Legal conclusions, a bare recitation of the elements of a claim, and "naked assertions devoid of further factual enhancement" are insufficient. Id. (quoting Twombly, 550 U.S. at 555, 557).

Factual allegations—but not legal conclusions—are accepted as true for the purpose of evaluating the motion. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). If the alleged facts make clear that, as a matter of law, "no relief could be granted under any set of facts that could be proved consistent with the allegations," the court can dismiss the claims. Neitzke v. Williams, 490 U.S. 319, 326-27 (1989) (quotations omitted).

When evaluating a Rule 12(b)(6) motion, the court may rely on "the complaint in its entirety" and "documents attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). A document

5

is incorporated into the complaint when "it is integral to the complaint and there is no dispute about the document's authenticity." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). A court may also take judicial notice of matters of public record and "adjudicative facts" pursuant to Federal Rule of Evidence 201(b) when considering a Rule 12(b)(6) motion. Goldfarb v. Mayor & City Council of Balt., 791 F.3d 500, 508 (4th Cir. 2015); Greenhouse v. MCG Cap. Corp., 392 F.3d 650, 657 (4th Cir. 2004). However, judicial notice should not "be used as an expedient for courts to consider matters beyond the pleadings and thereby upset the procedural rights of litigants to present evidence on disputed matters." Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc., 728 F.3d 354, 360 (4th Cir. 2013) (quotations omitted). If the court does take judicial notice of a document, the facts within that document must be construed in a light favorable to the plaintiff. Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 607 (4th Cir. 2015). If a court chooses to go beyond these documents, the Rule 12(b)(6) motion converts into one for summary judgement, which is governed by Rule 56. Fed. R. Civ. P. 12(d).

## II. Parties' Arguments

### a. *Bowman's Memorandum of Law in Support*

First, Bowman argues that Walton Virginia was not a party to the Contract, so it lacks standing to bring a claim for breach of

6

contract under COUNT ONE. ECF No. 10 at 5. Relatedly, Bowman contends that Walton Virginia is not an intended third-party beneficiary of the Contract because Walton Virginia and Walton Global are two separate entities and there is no language in the Contract indicating that Walton Global and Bowman intended to confer a benefit on Walton Virginia. Id. at 6. Instead, says Bowman, Walton Virginia is an incidental beneficiary, and, under Virginia law, incidental beneficiaries do not have standing to sue for breach of contract. Id. (quoting Thorsen v. Richmond Soc'y for the Prevention of Cruelty to Animals, 786 S.E.2d 453, 462 (Va. 2016)). Accordingly, Bowman concludes that Walton Virginia's claim for breach of contract under COUNT ONE should be dismissed with prejudice. ECF No. 10 at 7.

Second, Bowman argues that COUNT TWO as pleaded by Walton Virginia is barred by Virginia's economic loss rule because "a plaintiff may not rely on a theory of tort negligence to recover economic losses against a defendant." ECF No. 10 at 7-8. Rather, Bowman contends, the law of contracts should govern, but, because Walton Virginia is not in privity with Bowman, it cannot recover purely economic damages. Id. at 8-9. Bowman further emphasizes that the COMPLAINT lacks any factual allegations showing that Bowman was in privity with Walton Virginia or that Walton Virginia

suffered physical injury to person or property. Id. At 9-10. Accordingly, Bowman argues that Walton Virginia cannot recover under COUNT TWO and, therefore, COUNT TWO should be dismissed with prejudice. Id. at 11-12.

Third, Bowman contends that Walton Global cannot bring a claim for breach of contract because Walton Global received the benefit of the bargain by receiving a "finalized due diligence report and concept plan." ECF No. 10 at 13-14. Additionally, Bowman asserts that the agreed upon terms of the Contract "relieve Bowman from claims of damages allegedly caused by professional negligence" because the release clause states that Bowman "'shall not be liable . . . for any special, incidental, or consequential damages whatsoever arising out of, resulting from, or in any way related to'" the Report.[2] Id. at 14-15 (quoting ECF No. 10-1 at 12). Bowman asserts that the alleged injury is a consequential damage because Walton Global's transfer of the Report and Walton Virginia's failure to seek other assessments as recommended in the Report "break[] any link between Bowman's work and the resulting alleged limitations to development to the land," so Walton Global cannot seek recovery. ECF No. 10 at 15-16. Bowman then argues that Walton

---

[2] The Contract is integral to the COMPLAINT because it is the source for the breach of contract claims and is specifically relied upon throughout the COMPLAINT. Accordingly, it can be considered at this stage of the proceedings and will be construed in the light most favorable to the Plaintiffs. Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 607 (4th Cir. 2015).

Global does not have standing to claim damages arising from the purchase of the property because Walton Virginia bought and currently owns the Property while Walton Global has never had an ownership interest in the Property and there are no facts alleged in the COMPLAINT that show a connection between the two entities or that Walton Global was involved in the purchase of the Property. Id. at 16-17.

Fourth, Bowman argues that COUNT TWO must be dismissed with prejudice as to Walton Global because, under Virginia's source of duty rule, "[a] plaintiff may not rely on a theory of tort negligence to recover economic losses against a defendant." ECF No. 10 at 18. Bowman contends that any duty it owed to Walton Global was established in the Contract for the Report, which is governed by the law of contracts rather than the law of torts. Id. at 19-20. Accordingly, Bowman argues that that the tort claims in COUNT TWO are impermissibly asserted. Id. at 20-21.

### b. Walton's Memorandum of Law in Opposition

Walton argues that, overall, the issues that Bowman raises cannot be resolved at this stage of the litigation because they cannot be resolved until after a fact-intensive inquiry. ECF No. 11 at 6-7. As to COUNT TWO, Walton argues (while also admitting that it was "arguably unartfully worded") that the claim is "actually based on the Contract's subsuming within it Bowman's professional obligations to not fail to disclose or engage in

constructive fraud" rather than a claim based in tort law, so any argument raised by Bowman on the basis that COUNT TWO wrongfully asserts tort claims is simply a misapprehension of what COUNT TWO alleges. Id. at 10 n.7, 15.

Responding specifically to each of Bowman's arguments, Walton first argues that Walton Virginia was an intended third-party beneficiary of the contract for three reasons: (i) The contract contains numerous references to Walton Virginia, including "references to 'affiliates' of Walton Global, [references] to entities claiming 'through' Walton Global, and" specific references "to Walton Virginia itself"; (ii) "[T]he Complaint expressly alleges that Walton Virginia is 'an affiliate beneficiary under the Bowman contract'"; and (iii) Walton and Bowman had a prior course of dealing, so Bowman should have been aware that its services would have been for the benefit of Walton Global and its affiliates, including Walton Virginia. Id. at 8-10. Accordingly, because Walton Virginia is a beneficiary of the contract, Walton asserts that Walton Virginia has standing to assert both claims. Id. at 10-11.

Second, Walton argues that Walton Global did not receive the benefit of its bargain because the Report was "materially misleading and just plain wrong—clearly not what Walton hired and paid the Defendant to provide." ECF No. 11 at 11. Walton goes on to say that Bowman was aware that Walton Global would rely on the

Report to decide whether to purchase the Property, and because it indeed did rely on the faulty Report, it suffered damages that were a direct result of Bowman's breach. Id. at 12. As for the release clause, Walton contends that the Contract only limits truly consequential damages, such as "lost profits on houses Walton could have built and sold," but that the Contract does not preclude the damages here because reliance on the Report to purchase the Property is a direct damage that was "an entirely predictable result of Bowman's failure to deliver an accurate analysis of the Property." Id. at 13-14. As to Bowman's argument that Walton Global did not incur any damages because it was not the entity that purchased the Property, Walton argues that the COMPLAINT alleges that both entities were damaged, which must be construed as true, in the absence of any evidence that Walton Global was not damaged. Id. at 14-15.

Third, Walton Global argues that the source of duty rule would not preclude it from asserting COUNT TWO because, as discussed briefly above, COUNT TWO is based on the professional duties established by the Contract rather than any duties created under the law of torts. ECF No. 11 at 15. Walton Global asserts that it simply made an organizational decision to separate the breach into two counts rather than one. Id. at 16.

### c. Bowman's Reply

As for the third-party beneficiary issue, Bowman contends that the text of the COMPLAINT makes clear that Walton Virginia and Walton Global are separate entities and that there are "no facts surrounding the contractual transaction and the formation of the Contract in order to support an argument that the Contract was intended to confer a benefit upon Walton Virginia." ECF No. 12 at 2. Additionally, Bowman argues that there are no factual allegations concerning the parties' prior dealings, and, that therefore, those dealings cannot be considered when deciding the third-party beneficiary issue because "Plaintiffs may not raise new facts in opposing dismissal and ask the Court to rely on those facts in determining whether they have stated a claim." Id. at 2-4. Bowman also contests whether the plain language of the Contract signals that Walton Virginia was an intended beneficiary, especially considering that the name of the entity was only used once in passing, and there is language that expressly limits the benefits of the agreement to the "parties hereto." Id. at 5-9 (quoting ECF No. 10-1 at 15).

The remainder of the arguments in Bowman's Reply mirror the arguments made in its opening brief.

## III. Analysis

### a. *Walton Virginia as Third-Party Beneficiary in COUNT ONE*

An intended beneficiary has standing to sue because the parties to the contract "agreed between themselves to bestow a benefit upon the third party but one of the parties to the agreement fails to uphold his portion of the bargain." Copenhaver v. Rogers, 384 S.E.2d 593, 596 (Va. 1989). In contrast, "[a]n incidental beneficiary is so far removed from the obligations assumed by the contracting parties that a court will not allow him to sue on that contract." Thorsen v. Richmond Soc'y for the Prevention of Cruelty to Animals, 786 S.E.2d 453, 462 (Va. 2016). "While a contract may expressly state such an intent to benefit a third party, evidence of such intent need not be limited to the four corners of the contract" and can be shown by the surrounding circumstances and other "modes of expression of intent." Tingler v. Graystone Homes, Inc., 834 S.E.2d 244, 268-69 (Va. 2019) (quotations omitted).

Under Virginia law, "[a] nonparty [to a contract] must allege facts sufficient to conclude that it was a 'clearly and definitely intended beneficiary'" in order to bring a breach of contract claim because "'[a]n incidental beneficiary has no standing to sue.'" Thorsen v. Richmond Soc'y for the Prevention of Cruelty to Animals, 786 S.E.2d 453, 462 (Va. 2016) (quoting Kelly Health Care, Inc. v. Prudential Ins. Co., 309 S.E.2d 305, 307 (Va. 1983)). Federal

pleading standards require no less. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).

As is clear from the COMPLAINT and the Contract, Walton Global and Bowman were the only two parties to the Contract. Compl. ¶ 8; ECF No. 10-1 at 10. Accordingly, for Walton Virginia to have standing to bring a breach of contract claim, it must have clearly and definitely been an intended beneficiary of the Contract.

The Contract clearly and unambiguously states:

> This Agreement is solely for the benefit of the parties hereto and, to the extent provided herein, their respective affiliates, directors, officers, employees, agents and representatives, and no provision of this Agreement shall be to confer upon third-parties any remedy, claim, liability, reimbursement, cause of action, or other right.

ECF No. 10-1 at 15 (emphasis added). This means that an affiliate or representative of Walton Global would be an intended beneficiary of the Contract "to the extent provided [in the Contract]," but a separate third-party would not. Id. The COMPLAINT provides little, if any, information on the relationship of Walton Global to Walton Virginia beyond providing the necessary information to determine whether the Court has jurisdiction and a conclusory statement that Walton Virginia is "an affiliate beneficiary under the Bowman Contract." Compl. ¶¶ 1-2, 14.[3] Being "an affiliate beneficiary" is

---

[3] Bowman cites ¶¶ 1-2 of the COMPLAINT to argue that Walton Global and Walton Virginia admitted that they are two "completely separate

14

a confusing and conclusory term. That language does not satisfy the federal pleading standards.[4] However, Walton Virginia is listed in the Contract as the billing entity that is responsible for making the payments specified in the Contract, which suggests that there is some relationship between the two entities that was known to Bowman when executing the Contract. ECF No. 10-1 at 19.

In its response, Walton alleges that there was a prior course of dealing between the three entities that would have alerted Bowman to the relationship between Walton Global and Walton Virginia. However, that is not alleged in the COMPLAINT, and, therefore, any prior course of dealings cannot be considered in deciding the Motion. Bishop v. 7-Eleven, Inc., No. 4:11-cv-73, 2011 WL 13192917, at *1 (E.D. Va. Aug. 9, 2011) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quotations and alterations omitted)).

Accordingly, the Court must grant the Motion as to Walton Virginia on COUNT ONE. However, considering what appears in the COMPLAINT and in the briefs, this dismissal must be without prejudice and with leave to amend so that additional information

_____

and distinct entities." ECF No. 10 at 6. However, making all reasonable inferences in favor of the Plaintiffs, the COMPLAINT cannot be read to admit that. Accordingly, the Court will disregard Bowman's reading of ¶¶ 1-2 of the COMPLAINT.

[4] The statement that Walton Virginia is an affiliate beneficiary is a conclusion of law and thus cannot be accepted as true. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

15

might be added to the COMPLAINT, if appropriate, about: (1) the business relationship, if any, between Walton Global and Walton Virginia; and (2) what, if any, prior course of dealings occurred that would have given reasonable notice to Bowman that Walton Virginia would be an intended beneficiary of the Contract.

### b. *Economic Loss Rule as to Walton Virginia in COUNT TWO*

Under Virginia law, "losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." Filak v. George, 594 S.E.2d 610, 618 (Va. 2004). Thus, "when a plaintiff alleges . . . nothing more than disappointed economic expectations assumed only by agreement, the law of contracts, not the law of torts, provides the remedy for such economic losses." Id. Accordingly, the parties must be in privity for a plaintiff to recover purely economic damages from a defendant because the claim cannot be brought as a tort claim. Blake Constr. Co., Inc. v. Alley, 353 S.E.2d 724, 726 (Va. 1987); see also Copenhaver v. Rogers, 384 S.E.2d 593, 595 (Va. 1989) ("It is settled in the Commonwealth that no cause of action exists in . . . cases [solely for economic loss] absent privity of contract."). "In privity" for the purpose of bringing a breach of contract claim for solely economic loss includes "clearly and definitely intended" third-party beneficiaries. Copenhaver, 384 S.E.2d at 595-96.

16

COUNT TWO asserts a claim for constructive fraud, negligent misrepresentation, and/or non-disclosure based on Bowman's duty to discover and disclose the proffers. Compl. ¶¶ 24-27. The COMPLAINT attributes the source of this duty to both contract and tort law. Compl. ¶ 25. However, the response brief describes COUNT TWO as a claim for "breach by the Defendant of its professional duties—subsumed within the enforceable under—the Contract" and that COUNT TWO "seeks damages related to the Defendant's breach of its obligations to not misrepresent, and to fully disclose, conditions and features of the Property" as described in the Contract. ECF No. 11 at 12.

The first part of that sentence asserts that COUNT TWO sounds in contract. The second part sounds in tort.[5] The COMPLAINT is quite unclear as to what claim Walton actually is attempting to assert and whether that claim would come from tort or contract law. Indeed, Walton even admitted in its response that COUNT TWO was "unartfully worded." ECF No. 11 at 12. That is a substantial understatement. The briefing perpetuates the confusion. Accordingly, the Court will grant the Motion without prejudice and

---

[5] "[B]reach of its obligations to not misrepresent, and to fully disclose, conditions and features of the Property." ECF No. 11 at 12.

17

with leave to amend with the advice that the Plaintiffs make it clear what claims are being asserted and what the source of law is.[6]

### c. *COUNT ONE as to Walton Global*

Bowman makes essentially three arguments for why COUNT ONE should be dismissed as to Walton Global: (1) there is nothing to suggest Walton Global actually purchased the property; (2) the damages sought by Walton Global are not direct damages and thus cannot be brought because of the "release clause" of the Contract[7]; and (3) Walton Global received the benefit of its bargain by acknowledging that it received a finished Report. ECF No. 10 at 13-17. The first argument alone leads the Court to grant the Motion without prejudice and with leave to amend because, as Bowman correctly notes, the COMPLAINT does not plead that Walton Global was financially involved in the purchase of the Property. Rather, the COMPLAINT alleges that Walton Virginia bought the Property in good faith reliance on Bowman's Report (which it presumably

---

[6] Even if the Court assumes that COUNT TWO is based in the law of contracts, the Motion would still be granted without prejudice and with leave to amend as to Walton Virginia because, as discussed above, it is not clear from the COMPLAINT whether the Court can conclude that Walton Virginia is an intended third-party beneficiary of the Contract and thus is in privity with Bowman to be able to assert a contract-based claim for purely economic loss.

[7] The "release clause" of the Contract provides that Bowman "shall not be liable . . . for any special, incidental, or consequential damages whatsoever arising out of, resulting from, or in any way related to" the Report. ECF No. 10-1 at 12.

received from Walton Global, but that fact is not alleged). Compl.
¶ 14. Based on the COMPLAINT as tendered, the Court cannot conclude
that Walton Global purchased the property, which, as explained
below, would affect the analysis as to damages.[8]

Under Virginia law, "[d]irect damages are those which arise
'naturally' or 'ordinarily' from a breach of contract" and "can be
expected to result from a breach." Roanoke Hosp. Ass'n v. Doyle &
Russell, Inc., 214 S.E.2d 155, 160 (Va. 1975). In this case,
assuming that there was a breach of contract, the COMPLAINT as
written would sufficiently allege that Walton Global suffered
direct damages if it were involved in the purchase of the property
because Bowman was aware that Walton Global was using the Report
to decide if it would purchase the Property for redevelopment, so
purchasing the Property would be an expected result of the alleged
breach. Compl. ¶ 15. However, if Walton Global was not involved in
the purchase of the Property and instead gave the Report to Walton
Virginia without Bowman expecting it to, the damages to Walton
Global might more appropriately be considered consequential
damages because it would be "the intervention of 'special
circumstances' not ordinarily predictable." Roanoke Hosp. Ass'n,

---

[8] In its Response, Walton contends that the COMPLAINT alleges that
both parties were damaged, so the Court must take that allegation
as true. ECF No. 11 at 15. However, that allegation is a conclusory
statement of law, so the Court need not accept it as true nor
consider it when deciding the Motion. Bell Atlantic Corp. v.
Twombly, 550 U.S. 544, 555 (2007).

214 S.E.2d at 160. And, pursuant to the "release clause" of the Contract (ECF No. 10-1 at 12), Walton Global waived its ability to bring a breach of contract claim against Bowman for consequential damages. Accordingly, more information on Walton Global's involvement, if any, with the purchase of the Property is necessary to decide this issue, so leave to amend on this basis will be granted.

As for the third argument (benefit of the bargain), the Court declines to address that argument at this time because it is unnecessary to make a decision on whether the Motion should be granted or denied on the current record. See O'Neal v. Brennan, No. 1:14-cv-1770, 2015 WL 11109492, at *2 (E.D. Va. May 27, 2015) ("Because these arguments are so dispositive, the Court need not consider the defendant's other arguments.").[9]

### d. *Source of Duty Rule as to Walton Global in COUNT TWO*

As explained above, under Virginia law, "losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." Filak v. George, 594 S.E.2d 610, 618 (Va. 2004). Because it is unclear whether COUNT TWO is asserting a claim under the law of contracts or the law of torts (see infra Sec. III.b),

---

[9] Nonetheless, it is difficult to understand how receipt of a defective report could be a benefit of the bargain. Counsel for Bowman might reflect further on whether that theory should be asserted on the next go round.

the Motion will be granted without prejudice and with leave to file an Amended Complaint as to COUNT TWO for Walton Global.

## CONCLUSION

In sum, the Motion will be granted without prejudice and with leave for Walton to file an Amended Complaint. Plaintiffs use "Walton Global" and "Walton Virginia" interchangeably, so it is difficult to discern whether both parties, or either of them, have stated viable claims. Additionally, the COMPLAINT lacks allegations concerning the relationship between the two Walton parties and whether or to what extent Bowman was aware of the relationship, which bears upon multiple issues that Bowman raised in its Motion.[10]

Accordingly, for the foregoing reasons, DEFENDANT'S MOTION TO DISMISS (ECF No. 9) pursuant to Fed. R. Civ. P. 12(b)(6) will be granted without prejudice and with leave to file an Amended Complaint. When preparing the Amended Complaint, counsel for Plaintiffs must study the basic principles of Virginia substantive law, the basic law of contracts, and the federal law of pleadings. Thereafter, they must present a well-pleaded complaint that is understandable and that is in conformance with applicable law.

---

[10] In its response, Walton accuses Bowman of failing to provide evidence to the Court to support its arguments in the Motion. ECF No. 11 at 15. But the burden is on Walton, not Bowman, to make the factual allegations in the Complaint (or Amended Complaint) to support its claims. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

21

And, when so doing, counsel must decide whether Walton Global and/or Walton Virginia qualifies as a party to whatever contract there was with Bowman. A repeat of the undisciplined approach to pleading and substance will not again be given the benefit of leave to amend.

It is so ORDERED.

/s/

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: June 22, 2023