UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| WALTON GLOBAL INVESTMENTS, LTD., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 3:23-cv-00087-REP |
| | ) |
| BOWMAN CONSULTING GROUP, LTD., | ) |
| | ) |
| Defendant. | ) |

## THIRD AMENDED COMPLAINT

Walton Global Investments, Ltd. ("**Walton Global**") and Walton Virginia, LLC ("**Walton Virginia**") (together, the "**Plaintiffs**"), by and through their undersigned counsel, hereby sue Bowman Consulting Group, Ltd. ("**Bowman**") and for a cause of action state:

## Jurisdiction And Venue

1. Walton Global is a corporation formed under the laws of Canada with its principal place of business located in Canada.

2. Walton Virginia is a Virginia limited liability company in good standing. Walton Virginia's sole member is Walton International Group (USA), Inc., which is a corporation formed under the laws of Arizona with its principal place of business located in Arizona. At the time Plaintiffs' cause of action accrued and the damages were suffered (hereinafter, "Times Relevant"), Walton Global owned and controlled Walton Global Holdings, Ltd., which owned and controlled Walton International Group (USA), Inc.[1]

---

[1] In 2021, Walton International Group completed a restructuring. Plaintiff Walton Global and Walton International Group (USA), Inc. (parent company to Plaintiff Walton Virginia) are now sister companies with the same parent company, Doherty Real Estate Holdings, Inc. ("Doherty, Inc."), but the claims that accrued in favor of Walton Global, as explained herein, are still owned and controlled by Walton Global and Walton Virginia.

3. Bowman is a corporation formed under the laws of the state of Delaware with its principal place of business located in Virginia.

4. In light of the foregoing, diversity exists as between the Plaintiffs and the Defendant.

5. The amount in controversy exceeds $75,000. Given this, and the existence of diversity as between the Plaintiffs and the Defendant, this Court has subject matter jurisdiction under 28 U.S.C. §1332 to decide this controversy.

6. Venue in this Court is proper, as the matters in controversy involve transactions and occurrences between the parties in Virginia, concerning real property located in Powhatan County, Virginia and contracted-for services, undertakings, acts and omissions performed/ committed in Powhatan County, Virginia.

## Facts Common To All Counts

7. In April 2018, Walton Global, a national real estate land asset manager & financier specializing in (*inter alia*) the purchase, entitlement and re-sale of developable, residential real estate, was considering whether to purchase a piece of real property comprised of a 74 acre +/- parcel of land (a.k.a. parcel 47-29) in Powhatan County, Virginia (the "**Property**").

8. Walton Global's practice in the U.S. at the time was to pursue real estate entitlement and development opportunities in individual States, but to purchase those State-specific properties (if it decided to) through its local sub-subsidiary/affiliate. In Virginia, that was Walton Virginia.

9. At Times Relevant, Walton Global was parent-owner of both Walton Virginia's owner, Walton International Group (USA), Inc., and of Walton Virginia, twice removed. Walton Global was, therefore, the parent in the disclosed and understood affiliated ownership structure

under the hereinafter-defined Bowman "Contract," and Bowman understood that any purchase of the Property under consideration by Walton Global would actually be executed through its disclosed affiliate, Walton Virginia, acting as grantee.  Walton Global controlled and directed everything done by Walton Virginia (at Walton Global's direction) in technically acquiring and becoming the deed grantee to the Property at closing – acting (at least *vis-à-vis* Bowman) as disclosed agent for Walton Global.  Therefore, any claims for damage suffered by Walton Global as a result of its purchase of the subject Property through Walton Virginia (as deed grantee), in reliance on the Bowman consulting opinions complained of herein, belong to Walton Global, both directly and vicariously.  This disclosed (and understood in real time) dual capacity of Walton Global and Walton Virginia (as principal and agent, respectively) exists in this case, in addition to and notwithstanding that Walton Global at Times Relevant was also parent company to Walton Virginia (as Walton Global's owned/controlled sub-subsidiary LLC).

10. The officers and directors of Walton Global are William Doherty (Sole Director and CEO), Kate Kaminski (COO) and John Plastiras (EVP Real Estate).  Walton Virginia, a single member LLC, does not have any officers or directors; rather, all consents and resolutions at Times Relevant were executed by its sole member, Walton International Group (USA), Inc.  The officers and directors of Walton International Group (USA), Inc., at Times Relevant, were William Doherty (Director & CEO), Siobhan Doherty (Director, VP & Secretary), Ryan Kretschmer (COO, Privacy Officer & EVP Law), Ed Fleming (Vice President), and John Vick (Vice President).

11. Again, Walton Global always intended to take title to the Property (if it decided to) through its sub-subsidiary, Walton Virginia, and Walton Global's business plan in this regard was explained to and well understood by Bowman.  Indeed, Bowman insisted that Walton

3

Virginia (the intended third-party beneficiary and sub/subsidiary of Walton Global that would actually take deed title to the subject Property for Walton Global and itself at closing) also be expressly obligated for the Bowman fee under the hereinafter-defined Bowman/Walton "Contract."[2]  Thus, it was known to and acknowledged by both parties – including, but not limited to in the language of the parties' Contract itself -- that Bowman's due diligence services would not be, and were not solely, for the intended benefit of Walton Global, but also for the benefit of its disclosed sub-subsidiary and agent/deed grantee of choice, Walton Virginia.[3]

12.     To assist with a due diligence feasibility study and concept plan for the Property, and to distill a reasonable projection of the upzoning and residential development potential for the subject Property under state and local regulations and any other restrictions regarding same, Walton Global (for its benefit and for the benefit of, and on behalf of, its disclosed/intended third-party beneficiary and agent and would-be deed grantee, Walton Virginia), engaged Bowman by written contract (*i.e.*, the Contract, *see* Exhibit 1).

---

[2]     *See* **Exhibit 1** hereto, the April 18, 2018 Contract (the "**Contract**") entered into by and between Bowman and Walton Global, at p. 18 of 21.  The billing entity is clearly identified as "Walton Virginia, LLC."

[3]     The Contract contains multiple references to "affiliates" of Walton Global.  Exhibit 1 at p. 10 of 21 (¶ 4) ["…the parties intend that the Retainer be applied to the final invoice for the services described in the Agreement, or against any other unpaid amounts owed to BCG should Client (*or any affiliate of the Client*) fail to timely pay invoices due BCG"] (emphasis added); *see also id*. at p. 14 of 21 (¶ 18) ("This Agreement is solely for the benefit of the parties hereto and, to the extent provided herein, *their respective affiliates*, directors, officers, employees, agents and representatives") (emphasis added).  The Contract also contains multiple references to entities claiming "through" Walton Global.  Exhibit 1 at p. 11 of 21 [¶7(b)] ("Notwithstanding any other provision of this Agreement, the total liability, in the aggregate, of BCG and BCG's officers, directors, partners, employees, agents, and consultants to Client *and anyone claiming through Client*, shall not in any manner whatsoever exceed the direct losses incurred by Client...") (emphasis added); *see also id*. at p. 11 of 21, [¶ 7(c)] ("To the fullest extent permitted by law, BCG and BCG's officers, directors, partners, employees, agents, and sub-consultants shall not be liable to Client *or anyone claiming through Client* for any special, incidental, indirect, or consequential damages whatsoever...") (emphasis added).

13. Bowman's analyses were intended to inform Walton Global's and Walton Virginia's understanding of the upzoning and residential development potential for the subject Property and to help Walton Global decide -- for itself and for its disclosed/affiliate agent and would-be deed grantee, Walton Virginia – whether to waive its feasibility study contingency and go firm on a Purchase and Sale Agreement to purchase the subject Property (for the known and intended benefit of Walton Global and Walton Virginia).[4] All such decision making in this regard for Walton Global and Walton Virginia was directed and controlled by Walton Global.

14. Walton Virginia, as agent for Walton Global, contracted to purchase the subject Property on or about April 25, 2018 (said contingent contract to purchase the Property hereinafter the "**PSA**") within days after Walton Global's contracting (on its own behalf, and also for the intended benefit of its disclosed agent and would-be deed grantee, Walton Virginia) with Bowman. However, the Contract expressly reserved to Walton Virginia (as contract purchaser) a 60-day feasibility study period before Walton Virginia was required to go firm on

---

[4] As explained herein, it was always understood between the parties that Walton Global would have recourse on the subject Contract for any damages incurred in purchasing the Property devolving from Bowman's breach, albeit through its disclosed agent and would-be deed grantee, Walton Virginia. Indeed, informing Walton's closing decision in that regard was the stated purpose of the Contract. Although they do not concede it was necessary in light of the facts stated herein and in this lawsuit, Walton Global and Walton Virginia nevertheless also executed the "Mutual Confirmatory Acknowledgment and Assignment of Claims/Chose In Action" attached hereto as **Exhibit 2** (the "**Confirmatory Assignment**") to eliminate and moot any potential question (not admitted) that both Plaintiffs herein, as a matter of fact and law, jointly own and control the meritorious claims asserted herein against Bowman, both with respect to privity of contract/standing to sue, and joint recourse for the damages caused by Bowman's breach, and to further confirm and evidence Walton Global's and Walton Virginia's always-intended rights with respect to Bowman, the Contract, and the Property. Note that the Confirmatory Assignment is not an assignment of the Contract itself. Rather, as evidenced by its terms, the Confirmatory Assignment confirms the mutual/cross assignments of the right to assert any claim or chose in action that the Plaintiffs, whether jointly or severally, may have as against Bowman for breach of the subject Contract.

the PSA and (*inter alia*) put at risk the PSA deposit money (which was in fact paid by Walton Virginia's disclosed principal, Walton Global).

15.     On June 12, 2018, Bowman – bound by contract and holding itself out as a licensed expert in such matters – provided Walton Global (for the benefit of Walton Global and its disclosed agent Walton Virginia's benefit) a final, written Due Diligence Report ("**DDR**") and Concept Plan, pursuant to the Contract, but addressed to "Walton®," further indicating that Bowman's consultant services were for the intended benefit of both Plaintiffs.

16.     The June 2018 DDR was, on its face, "Prepared for Walton®," *i.e.*, the parent/ principal, Walton Global, and Walton Virginia, the sub-subsidiary/agent – through which Walton Global would structure any acquisition.  Walton Virginia had hired Bowman in the past, and Bowman had previously dealt with both Walton Global's affiliate Walton Virginia and the parent company, Walton Global.  Thus, Bowman certainly knew of this preferred Walton® deal structure at all Times Relevant; *viz.,* to arrange for funding of purchases and to run the deal, but to actually take deed title to State-specific properties through its local sub-subsidiary/ affiliates (as purchasing agent of Walton Global) pursuant to the well understood deal structure described herein.

17.     On June 1, 2018, prior to its delivery of the final DDR, Bowman delivered to Walton Global an ALTA survey that Bowman prepared.  That same day, Walton Global directed Bowman to certify the survey to Walton Virginia (the disclosed would-be deed grantee of the Property), instead of Walton Global.  So too, Bowman was advised that the "Phase 1" Environmental Study, done by Bowman under that same Contract with Walton Global (and disclosed affiliate "claiming through" Walton Global), was expressly intended to be relied upon

by Walton Virginia.  On June 12, 2018 Bowman delivered a revised ALTA survey certified to Walton Virginia.  On the same day, Bowman delivered a revised DDR.

18. In this way, Bowman also had actual notice, consistent with the understanding *ab initio*, of Walton Virginia's status as intended Contract beneficiary and as disclosed Walton Global agent, that would actually act as deed grantee at closing (in reliance on Bowman's hereinafter-described breach of the Contract in opining in its DDR and other studies, such as the Concept Plan prepared by Bowman pursuant to same).

19. The documents provided by Bowman included Bowman's analysis and professional opinions, as an expert in local entitlement and development of real estate, of what the then-current upzoning and residential development potential of the Property supposedly was, and what was likely feasible in Powhatan County at that time (and for the foreseeable future) as a would-be entitlement and development plan for the Property.  Bowman's opinions included, but were not limited to, the Property's potential for up-zoning under the then-current County comprehensive zoning planning for the Property.  Those documents were all delivered by Bowman with the express and mutually-understood purpose of helping inform Walton Global's decision (for it, and its intended third-party beneficiary, agent and would-be deed grantee at closing, Walton Virginia), whether to go forward with the as-planned purchase and government entitlement process for the Property.

20. Bowman's projected planning for supposedly feasible development of the Property erroneously analyzed the development potential and risk profile for the Property because it (*inter alia*) did not include any analysis of restrictive "proffers" of record which then encumbered the subject Property (the "**Subject Proffers**").  Indeed, Bowman expressly opined and (erroneously) assured Walton Global – for itself and for its disclosed agent and intended

Contract beneficiary (and would-be deed grantee), Walton Virginia – that no such restrictive proffers encumbered the Property or would otherwise adversely impact the development/entitlement potential of the Property.  However, to the contrary, many restrictive proffers of record (*i.e.,* the Subject Proffers) were indeed on readily accessible public record with the County and did indeed encumber the Property; in short, as substantial pre-existing constraints, continuing to restrict the Property's potential, unless negotiated away or modified in a successful future up-zoning of the Property.  Unfortunately, that needed release or modification could not be certain and severely clouded the prospects for upzoning, favorable recommendations in the Comprehensive Plan ("**Comp Plan**") notwithstanding.  Despite public and readily available information on record with the County, the Subject Proffers were not discovered or disclosed by Bowman in its (accordingly) flawed feasibility projections in its DDR and Concept Plan.

      21.     As a result, Bowman's DDR and Concept Plan documentation (including with respect to supposed "net developable land") erroneously assumes the baseline restrictions applicable to the Property (without the Subject Proffers) and erroneously projects (*inter alia*) that "…the County should be amenable to rezoning to Village Residential" -- which is substantially more supposedly feasible development for the subject Property than could reliably be projected in fact, due to the undisclosed Subject Proffers.  That was substantially due to the negative effect those Subject Proffers would likely cause on any effort to increase the development potential and residential density for the subject Property via the anticipated up-zoning (always Walton Global's and Walton Virginia's business plan for the Property, if feasible) despite what Bowman insisted was called for in the then-applicable comprehensive planning for the Property.

22. Bowman's DDR and Concept Plan were all oblivious to the undisclosed Subject Proffers (and in turn also lacked any disclosures with respect to certain wetlands/stream areas precluding/limiting Walton's projected feasibility decisions, which were also accurately described in the undisclosed Subject Proffers). Those Subject Proffers, *inter alia*, expressly limit residential development of the Property to 10 large acreage single-family residential lots – in stark contrast to the several hundred single-family (attached and detached) and multi-family units described and depicted in the DDR and Concept Plan which were, accordingly, factually wrong, unreliable in fact, incomplete in scope and negligently rendered. All of the foregoing was in violation of Bowman's contractual and professional undertakings and applicable professional standards of care governing same.

23. In good faith and reasonable reliance on Bowman's false and misinformed opinions with respect to the Property's entitlement/development feasibility, Walton Global, through its disclosed affiliate and agent/deed grantee, Walton Virginia, waived feasibility and went firm on the PSA, and thereafter proceeded to closing on the subject Property in July 2018.

24. The deposit under the PSA was paid by Walton Global. In order to fund the remaining purchase price for the Property, Walton Global raised cash from investors. That remaining purchase money (at Walton Global's instruction, and by design) was deposited directly into the Walton Virginia bank account to use at closing, as directed and controlled by Walton Global.

25. At all Times Relevant, Walton Global has retained control over those investor monies, as well as all purchase and sale decisions in regard to the Property, as Walton Virginia's disclosed principal – Walton Virginia's bare deed grantee status notwithstanding.

26. Indeed, it was always understood by Bowman – from this and at least one prior engagement by Walton Virginia, and from understanding the aforesaid Walton Global business model and its specific plan for the subject Property – that an intended third-party beneficiary (and, specifically, Walton Virginia) would, as agent for Walton Global, act as deed grantee for the Property (for itself and for its disclosed principal and beneficial owner, Walton Global), but also that any decision whether to purchase would be directed, and funding for same arranged by Walton Virginia's disclosed parent and principal, Walton Global. The aforesaid Walton Global business model includes a disclosed agent/principal relationship between the Plaintiffs, despite that (between them) only Walton Global's local/disclosed affiliate, Walton Virginia, acted as the deed grantee at closing.[5]

27. Bowman's reporting (always intended and known to be for the benefit of both Walton Global and its disclosed agent and would-be deed grantee, Walton Virginia) opined that the subject Property (which was then subject to three different zoning classifications) was likely to be approved as supposedly called for in the applicable Comp Plan (for the local zoning and land use district) for up-zoning to so-called "Village Residential. Indeed, that was the admitted assumption in Bowman's Concept Plan, depicting hundreds of single family (attached and detached) and multifamily units as supposedly feasible under the anticipated entitlement and up-

---

[5] Again, and in telling recognition of their joint and several, intended beneficiary (with recourse) status, as part of the Contract terms Bowman insisted that Walton Virginia (the known local Walton Global affiliate/sub-subsidiary of Walton Global, which both parties knew would take title of the Property at closing) expressly agree to be responsible for Bowman's fees and also acknowledged, expressly, that others (*e.g.*, Walton Virginia) could claim "through" Walton Global and have direct recourse/redress for any breach damages against Bowman. *See* Contract references at fn. 3, *supra*. Equally true, any cause of action accruing in favor of Walton Virginia in its role as agent, is owned by Walton Global – as Walton Global's disclosed agent (acting as deed grantee for its principal). Thus, Walton Global also has vicarious recourse/redress for Bowman's breach, notwithstanding its beneficial owner status and that it used its disclosed agent, Walton Virginia, to act as its bare deed grantee at closing.

zoning to Village Residential. However, the existence of the Subject Proffers substantially changed the risk profile for the Property and drastically reduced the market value of the Property for any reasonably prudent and knowledgeable buyer (like Plaintiffs sought to be through Bowman) looking to purchase the land for that supposed up-zoning and residential lot subdivision potential. If Bowman's feasibility opinions about the then-current status and potential of the land had been true, that would have <u>then</u> added substantial fair market value to the Property, as is (as recommended in the Comp Plan and without the undisclosed Proffers). Bowman always knew that was Walton Global and Walton Virginia's business plan, and Bowman expressly undertook to provide expert advice for both of their intended benefit and to help Walton Global decide whether to go forward with the project, starting with Walton Global (through Walton Virginia) waiving feasibility under the PSA and paying the purchase price at closing on the Property.

28. Even so, Bowman breached the Contract by negligently failing, in violation of the contractually-undertaken standard of care, to discover and disclose the Subject Proffers (including certain wetlands/stream areas, also described in the Subject Proffers but not discovered or disclosed by Bowman), let alone include them in its analysis for Walton Global and Walton Virginia, upon which Bowman knew and intended that each would be relying, and did so in fact. Those proffers were essential information to know in trying to appreciate the risk/benefit calculus for Plaintiffs, just as they would be for any informed residential entitlement (and/or developer) purchaser, like Plaintiffs sought to be in hiring and relying on Bowman's professional opinions.

29. As was always the stated plan if Bowman's reporting regarding potential up-zoning for the Property proved favorable, Walton Global – in reasonable reliance on its fee

11

professional consultant's expert analysis and projections, and through its agent and intended third-party beneficiary, Walton Virginia -- purchased the Property, with Walton Virginia acting as disclosed agent and deed grantee (as directed by and for the benefit of Walton Global) and with Walton Global funding the PSA deposit and arranging for the funding of the remaining purchase price at closing.  In so doing, the Plaintiffs reasonably believed that due to its favorable chances for up-zoning, as reported by Bowman (and without any detrimental proffers), the Property was worth probably more, but not less than approximately $6,607,000 [using a properly distilled "paper lot" fair market value of $13,437,500 under Bowman's flawed Concept Plan…and discounting same by a (probably too) conservative 50.1% probability of up-zoning per Bowman's written opinion regarding what the County authorities "should be amenable to."] If anything, Bowman's other interactions with Walton in this regard and in regard to the Concept Plan were, even _more_ enthusiastic about Walton's likelihood of a successful up-zoning. However, based upon the undisclosed Subject Proffers (and wetlands they also disclose), the Property was in fact worth much less.  Therefore, and had the Subject Proffers been properly described and timely disclosed to Plaintiffs by their fee professional, Bowman, ***Walton Global would never have purchased the subject Property*** nor taken legal/deed title through its intended third-party beneficiary, disclosed agent and deed grantee, Walton Virginia.

30. Indeed, and based upon the late-discovered (and undisclosed by Bowman) information concerning the Subject Proffers (and the wetlands expressly delineated therein), as well as the prejudicial effect that the Subject Proffers would have likely had on the Property for purposes of any potential upzoning described in Bowman's reporting (and notwithstanding Powhatan County's then comprehensive planning recommendation for upzoning the subject Property to Village Residential), the actual fair market value of the Property to a reasonably

prudent and properly informed purchaser of potential volume, lot inventory land (*e.g.*, Plaintiffs or a large homebuilder or land developer like Plaintiffs usually sell to) at the time of the closing on the Property was, at most, only slightly more than the $1,150,000 paid in fact at closing. This resulted in likely more, but not less than approximately $5,157,000 in compensable, benefit of the bargain, direct breach damages to Walton Global and with recourse by both Walton Global as disclosed principal and contracting party, and by Walton Virginia, jointly as disclosed agent/deed grantee and intended third-party beneficiary.

**Count I
Breach of Contract / Professional Negligence
(Plaintiffs' Joint Claim Ownership / Walton
Virginia's Third Party Beneficiary Recourse)**

31. Plaintiffs incorporate the foregoing factual allegations as though fully set forth.

32. Under the written Contract between Bowman and Walton Global, and applicable law (given the nature of Bowman's undertaking), Bowman, as a fee professional engineering firm and holding itself as an expert in real property entitlement and development feasibility in Powhatan County, Virginia, owed both Walton Global (as contracting party), and Walton Virginia, as intended third-party beneficiary under the Contract, a contract duty of due care equal to that owed by a reasonably prudent fee professional in the same profession, both as set forth in the Contract and otherwise. So too, and pursuant to the expedient Confirmatory Assignment (Exhibit 2), the instant breach of contract, reliance damage claim is jointly owned by the Plaintiffs, both with regard to standing to sue/privity and also with direct and joint recourse to redress the compensable, benefit of the bargain damages alleged herein.

33. Bowman breached those legal duties by, *inter alia*, failing to discover and timely disclose the existence of the Subject Proffers (existence and scope of certain existing wetlands/ stream areas inclusive), which disclosure was necessary for any reasonable, reliable and correct

understanding of the development and entitlement potential of the Property. That was an expressly understood and agreed purpose of Bowman's engagement and for the professional services it undertook to provide, for the intended benefit of both Walton Global and Walton Virginia, jointly, each with standing to sue Bowman for the damages complained of herein (*albeit* for a single recovery between them)…*i.e.*, for both Walton Global, as the contracting party, and Walton Virginia, its disclosed affiliate and agent (which would act as deed grantee, thereby taking legal title to the Property for and on behalf of Walton Global), as intended third-party beneficiary. *See* also fn. 3 and 4, *supra*, and Exhibit 2 regarding joint ownership of these breach of contract claims.

34. The foregoing failure to timely discover and disclose (and material misrepresentations regarding the supposed absence of) the Subject Proffers and wetlands/stream areas occurred while Bowman was under contract/professional duty to discover and disclose the subject Proffers and Property conditions, to Walton Global (as Contract party), and to Walton Virginia as intended beneficiary (and future deed grantee, as directed by its principal, Walton Global). *Accord*, Exhibit 2.

35. Bowman knew Walton Global (and Walton Virginia) would rely on Bowman's reporting regarding the development potential of the Property, which Plaintiffs reasonably did. Had Bowman acted prudently in regard to those undertakings (including the foregoing negligent failures to discover and disclose, and negligent misrepresentations regarding the supposed absence of the undisclosed proffers and extent of wetlands/stream areas) and otherwise met its contractual obligations, then Walton Global would not have closed on the Property – whether using its disclosed affiliate, and deed grantee, Walton Virginia or otherwise – and/or otherwise suffered the damages complained of.

36. As a direct and proximate result of Bowman's breach of the applicable standards of care assumed by Bowman in the Contract and under the attendant circumstances and its professional obligations, including Bowman's failure to timely discover and disclose the Subject Proffers and in falsely and negligently opining with respect to development potential of the Property without factoring in the Subject Proffers (including the corresponding wetlands/stream area information in those proffers), both of the Plaintiffs suffered compensable money damages, with recourse. Walton Global suffered said damages at closing as the contracting party with direct recourse for damages suffered from Bowman's breach (despite that Walton Global's disclosed agent acted as deed grantee, for and on behalf of Walton Global), and Walton Virginia as deed grantee for Walton Global and intended Contract beneficiary. *See also* fn. 3 and 4 and Exhibit 2.

37. Because the false inducements in Bowman's faulty and incomplete reporting regarding the supposed entitlement and residential development potential of the Property were provided as a fee-professional, pursuant to the Contract, and were intended to inform Walton Global's decision to close and fund the purchase (using its disclosed agent, Walton Virginia, as deed grantee), and also based on the Confirmatory Assignment of Claims at Exhibit 2, Plaintiffs are jointly entitled to the aforesaid "benefit of the bargain" measure of damages.

38. Under applicable Virginia law, in a non-defaulting plaintiff, versus fee expert consultant context like this (and under the facts of this case), damages should also be measured not later than the time of Plaintiffs' reliance-based purchase of the Property at closing, and include direct damages equal to Plaintiffs' lost benefit of the bargain. In short, Plaintiffs suffered damages at closing in this case to the extent of not less than the difference between (i) the Property's fair market value, as and if it had been as represented and opined by Bowman in its

15

reporting under the Contract, and (ii) the Property's actual value with the Subject Proffers (and the full extent of wetlands/stream areas, which the Subject Proffers also disclosed), which Bowman failed to timely discover and explain to the Plaintiffs.

39. All applicable notices were timely given and all conditions precedent to suit were timely satisfied under the subject Contract. Plaintiffs acted with appropriate due care and diligence at all times relevant.

WHEREFORE, Plaintiffs Walton Global Investments, Ltd. and Walton Virginia, LLC, jointly and severally, demand judgment (but for a single recovery) against Defendant Bowman Consulting Group, Ltd. on Count I in the amount to be proved at trial, but in excess of $75,000 (exclusive of costs), plus prejudgment interest from not later than the date of closing, and an appropriate award of costs and post-judgment interest from the date of judgment.

<u>**Count II**</u>
**Breach of Contract / Professional Negligence**
**(Disclosed Principal Walton Global's Vicarious Recourse**
**For Damages / Joint Claim Ownership – In The Alternative)**

40. Plaintiffs incorporate the foregoing factual allegations as though fully set forth.

41. Under the written Contract between Bowman and Walton Global and applicable law, Bowman, as a fee professional engineering firm and holding itself as an expert in real property development feasibility in Powhatan County, Virginia, owed Walton Global [as contracting party and as principal in a disclosed principal and agent relationship in regard to any potential purchase of the Property (as outlined above)] a contract duty of due care equal to that owed by a reasonably prudent fee professional in the same profession, both as set forth in the Contract and otherwise. Also, and as explained *supra*, Walton Global, as disclosed principal (and contracting party), has vicarious recourse for any damages suffered at closing due to Bowman's breach, notwithstanding that it used its disclosed affiliate and agent to act as PSA

16

purchaser and deed grantee at closing. So too, and pursuant to the expedient Confirmatory Assignment (<u>Exhibit 2</u>), the instant breach of contract, reliance damage claim is jointly owned by the Plaintiffs, both with regard to standing to sue/privity and redress for the damages alleged herein.

42. Bowman breached those legal duties by failing to discover and disclose the existence of the Subject Proffers (including the existence and scope of certain wetlands/stream areas), which disclosure was necessary for any reasonable, reliable and correct understanding of the upzoning and residential development potential of the Property. It was the expressly understood and agreed purpose of Bowman's engagement and for the professional services it undertook to provide, for the intended benefit of Walton Global, regardless that it used a disclosed agent and affiliate (Walton Virginia) to act as deed grantee at closing.

43. Bowman knew and intended that the parent, Walton Global, as contract party and principal, and its agent and sub-subsidiary (Walton Virginia), jointly, could and would rely on Bowman's reporting on the Property, which Walton Global reasonably did, to its compensable detriment. Had Bowman acted prudently in regard to its undertaking (by discovering and disclosing the existence of the Subject Proffers and related wetlands/stream areas), then Walton Global would not have used its funding and/or its disclosed affiliate/agent to act as deed grantee and close on the Property and/or otherwise suffered the damages complained of.

44. As a direct and proximate result of Bowman's breach of the applicable standards of care assumed by Bowman in the Contract and under the attendant circumstances and its professional obligations, including Bowman's failure to timely discover and disclose the Subject Proffers and in falsely and negligently opining with respect to entitlement and residential development potential of the Property without factoring in the Subject Proffers (including the

corresponding wetlands/stream area information in those proffers), Walton Global suffered compensable money damages when (i) it used its disclosed agent/affiliate (and intended third-party beneficiary) Walton Virginia to act as deed grantee to close, and (ii) provided funding for the deposit and arranged for the remaining funding to close on the Property.  So too, under the Confirmatory Assignment of Claims at <u>Exhibit 2</u>.  *Accord*, fn. 3 and 4, *supra*, and <u>Exhibit 2</u> regarding joint claim ownership.

45. Because Bowman's faulty reporting regarding the development potential of the Property was provided as a fee-professional, pursuant to the Contract, and was intended to inform Walton Global's decision to fund and close, using its disclosed agent as deed grantee (and also based on the Confirmatory Assignment at <u>Exhibit 2</u>), Plaintiffs are jointly entitled to their "benefit of the bargain" measure of damages.

46. Under applicable Virginia law, in a non-defaulting plaintiff, versus fee expert consultant context like this, damages should be measured not later than the time of Plaintiffs' reliance-based purchase of the Property, and include direct damages equal to Plaintiffs' lost benefit of the bargain.  In short, Plaintiffs have been damaged in this case to the extent of not less than the difference between (i) the Property's fair market value, as and if it had been as represented and opined by Bowman in its reporting under the Contract, and (ii) the Property's actual fair market value at closing, with the Subject Proffers (and the full extent of wetlands/stream areas, which the Subject Proffers also disclosed), which Bowman failed to timely discover and explain to either Plaintiff.

47. All applicable notices were timely given and all conditions precedent to suit were timely satisfied under the subject Contract.  Plaintiffs acted with appropriate due care and diligence at all times relevant.

WHEREFORE, Plaintiffs Walton Global Investments, Ltd. and Walton Virginia, LLC, jointly and severally, demand judgment (but for a single recovery) against Defendant Bowman Consulting Group, Ltd. on Count II in the amount to be proved at trial, but in excess of $75,000 (exclusive of costs), plus prejudgment interest from not later than the date of closing, and an appropriate award of costs and post-judgment interest from the date of judgment.

                                              Respectfully submitted,

                                              /s/ William F. Gibson II
                                        William F. Gibson II (VA Bar No. 45397)
                                        wgibson@shulmanrogers.com
                                        Kevin P. Kennedy (*pro hac vice*)
                                        kkennedy@shulmanrogers.com
                                        SHULMAN, ROGERS, GANDAL, PORDY
                                          & ECKER, P.A.
                                        12505 Park Potomac Avenue, 6th Floor
                                        Potomac, Maryland, 20854
                                        (301) 230-5200; (301) 230-2891 (fax)
                                        *Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 10, 2024, a true and correct copy of the foregoing was served, via the Court's online system, upon:

                        Stephan F. (Hobie) Andrews, Esq.
                        Katherine M. Rockwell, Esq.
                        Melisa Azak, Esq.
                        O'HAGAN MEYER, PLLC
                        411 E. Franklin Street, Suite 500
                        Richmond, VA 23219

                                              /s/ William F. Gibson II
                                        William F. Gibson II